STATE OF CONNECTICUT *v.* ROBERT GAINES
(12724)

DUPONT, C. J., and SCHALLER and SPEAR, Js.

Argued September 26—decision released December 27, 1994

*Richard S. Cramer,* for the appellant (defendant).

*Kevin T. Kane,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from a judgment of conviction of conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-48[1] and 53a-111 (a) (3) and (4),[2] and arson in the first

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-111 (a) provides in pertinent part: "A person is guilty of arson in the first degree when, with the intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and . . . (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

degree as an accessory in violation of General Statutes §§ 53a-8[3] and 53a-111 (a) (3) and (4). On appeal, he claims that the trial court improperly (1) denied his motion for judgment of acquittal because the state failed to produce sufficient evidence to establish beyond a reasonable doubt that Steven Pappas had started a fire or in the alternative had caused an explosion within the meaning of § 53a-111, (2) admitted the testimony of Dan Lewis, president of Pequot Insurance Agency, regarding whether the additional fire insurance premium had been paid, and (3) denied his motion to suppress tape-recorded conversations between the defendant and his nephew, Larry Anglin. We affirm the trial court's judgment.

The jury reasonably could have found the following facts. The defendant leased property located on Route 156 in Old Lyme for the purpose of operating a restaurant named Swordfish Sally's. The restaurant opened on June 10, 1988, but closed after a few weeks. The defendant had purchased fire insurance coverage in the amount of $250,000 on the building and $75,000 on its contents effective May 31, 1988. On June 24, 1988, he increased the coverage on the building to $350,000.

The defendant offered Anglin $35,000 to burn down the restaurant, and Anglin in turn arranged for Steven Pappas, an employee of the restaurant, to set the fire. On the morning of June 30, 1988, Anglin and Pappas filled six containers with gasoline and hid them in the restaurant. Later that night, Pappas returned and spread the gasoline in various areas of the restaurant. Although Pappas intended to ignite the gasoline, the

---

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

vapors ignited spontaneously before he had a chance to do so. The restaurant was destroyed by the resulting fire.

Pappas and Anglin were arrested and charged for their participation in the fire. Pappas pleaded guilty, and Anglin was found guilty after a trial. After his conviction, Anglin cooperated with the police in their investigation of the defendant. Anglin agreed to speak to the defendant, who had not been arrested or charged, and to allow his conversations to be recorded. Anglin taped five telephone conversations[4] with the defendant. In the course of these conversations, the defendant made inculpatory statements. The trial court denied the defendant's motion to suppress the tapes and admitted them into evidence at the defendant's trial.

## I

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal. In support of this claim, the defendant asserts that the state failed to produce sufficient evidence to establish beyond a reasonable doubt that Pappas either started a fire or caused an explosion within the meaning of General Statutes § 53a-111. We disagree.

In reviewing a sufficiency of the evidence claim, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993), quoting *State* v. *Traficonda*, 223 Conn. 273, 278,

[4] On August 28, 1991, Anglin taped a face-to-face conversation with the defendant. The admissibility of this tape is not contested by the defendant.

612 A.2d 45 (1992). To convict a defendant of arson, the state must prove beyond a reasonable doubt that the defendant possessed the specific intent to destroy or damage a building by starting a fire or causing an explosion. The defendant maintains that the state failed to introduce sufficient evidence that Pappas either started a fire or caused an explosion within the meaning of § 53a-111.

We conclude from our review that there was sufficient evidence from which the jury could have reasonably inferred that Pappas started a fire or caused an explosion. We have repeatedly held that statutory language is to be given its plain and ordinary meaning. *Mazur* v. *Blum,* 184 Conn. 116, 118, 441 A.2d 65 (1981); *Glastonbury Education Assn.* v. *Freedom of Information Commission,* 35 Conn. App. 111, 117, 643 A.2d 1320, cert. granted on other grounds, 231 Conn. 922, 648 A.2d 162 (1994). "It is appropriate for us to look at dictionary definitions in order to clarify the ordinary meaning of various terms." *State* v. *Domian,* 35 Conn. App. 714, 724, 646 A.2d 940 (1994). Webster's Third New International Dictionary (1966) defines "start" as "to begin an activity or undertaking . . . to bring into being: initiate, originate." Given Pappas' clear intent, his actions in carrying out that intent and the plain, common sense meaning of the statutory language, the jury reasonably could have found that Pappas indeed started the fire.

"Explosion" is defined by Webster's Third New International Dictionary (1966) as "a violent expansion or bursting that is accompanied by noise and is caused by a sudden release of energy from a very rapid chemical reaction." At trial, Pappas testified that he poured six cans of gasoline throughout the interior of the restaurant. After he had finished spreading the contents of the sixth can, he heard a whooshing sound, and the

restaurant spontaneously caught on fire.[5] It was reasonable for the jury to infer from Pappas' testimony that the fire resulted from the gasoline vapors igniting into a sudden burst of energy that produced the whooshing sound that Pappas described. In light of Pappas' testimony, it was reasonable for the jury to have concluded beyond a reasonable doubt that Pappas caused an explosion.

"It is true that penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create. . . . On the other hand, [t]he rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent." (Citations omitted; internal quotation marks omitted.) *State* v. *Roque*, 190 Conn. 143, 151, 460 A.2d 26 (1983); see *Singh* v. *Singh*, 213 Conn. 637, 646, 569 A.2d 1112 (1990).

Were we to accept the defendant's argument that Pappas' actions did not cause an explosion or start a fire, we would be interpreting the statute in such a narrow manner that the legislative intent would be thwarted.[6] The defendant cannot prevail on his sufficiency claim.

## II

The defendant next claims that the trial court improperly admitted Lewis' testimony into evidence. He argues that Lewis, president of Pequot Insurance Agency, should not have been allowed to testify that he did not believe the premium payments for the additional fire insurance had been paid.

[5] Pappas testified: "Well, it caught fire. I guess the gas, the vapors caught on the electrical or something, and it just—the vapors from the gasoline ignited with the electrical wires and caused an explosion."

[6] The defendant concedes in his brief that his interpretation of the statute "may not be thoroughly convincing."

Our Supreme Court and this court have consistently held that an issue that is not adequately briefed will not be addressed on appellate review. See *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); *Cohen* v. *Security Title & Guaranty Co.*, 212 Conn. 436, 437 n.1, 563 A.2d 510 (1989); *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 732, 557 A.2d 116 (1989); *New Haven Firebird Society* v. *Board of Fire Commissioners*, 32 Conn. App. 585, 591, 630 A.2d 131, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993). As this issue involves an evidentiary ruling, the defendant has the burden of showing, not only that the ruling was erroneous, but also, that it is more probable than not that the error affected the result. See *State* v. *Campbell*, 225 Conn. 650, 657, 626 A.2d 287 (1993). In his brief, the defendant fails to offer any legal argument or authority in support of his claim that the testimony should not have been admitted. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed . . . ." (Citations omitted; internal quotation marks omitted.) *Cohen* v. *Security Title & Guaranty Co.*, supra, 437 n.1. Given that the defendant did not adequately brief this issue we decline to review it.

## III

The defendant's final claim is that the trial court improperly admitted tape-recorded conversations between the defendant and Anglin. On appeal, the defendant argues that the conversations should have been suppressed because they were made after the defendant had announced he had retained counsel, and therefore were made in violation of the Rules of Professional Conduct. We disagree.

The following additional facts are necessary to resolve this issue. Anglin agreed to allow his conver-

sations with the defendant to be tape-recorded and relayed to the investigators. At that time, the defendant was considered a suspect, but had not been arrested or charged with any crime. Anglin recorded five telephone conversations with the defendant beginning on September 9, 1991. The first telephone conversation with the defendant was relayed to Agent Thomas Viens, an inspector with the division of criminal justice. On September 13, 1991, Viens questioned the defendant regarding a third party's involvement with the arson at Swordfish Sally's. At this meeting, the defendant mentioned that he was going to talk to an attorney to get some advice, and he mentioned the names of a few attorneys to Viens.

The second and third tape recordings were made on September 16, 1991. During one of the September 16 conversations, the defendant told Anglin that he had seen an attorney. Anglin recorded two subsequent conversations with the defendant on September 18 and September 21. On September 24, 1991, Attorney William McCoy informed Viens that he was representing the defendant in this matter. Upon hearing that the defendant .was represented, Viens told Anglin not to tape any further conversations with the defendant.

The issue framed by the defendant on appeal is whether the Rules of Professional Conduct require the suppression of evidence that an informant elicited and recorded from a suspect prior to an indictment or arrest, but after the suspect has sought the advice of an attorney. Rule 4.2 of the Rules of Professional Conduct provides that "a lawyer shall not communicate about the subject of the representation with a party the lawyer *knows* to be represented by another lawyer in the matter, unless the lawyer has the consent

of the other lawyer or is authorized by law to do so."[7] (Emphasis added.) The purpose of this rule "is to preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer. The rule is designed to prevent situations in which a represented party may be taken advantage of by opposing counsel." *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 236, 578 A.2d 1075 (1990).

The trial court found as a matter of fact that the state was not clearly aware that the defendant was represented by counsel during the period of time when Anglin was tape-recording his conversations with the defendant. On the basis of this finding of fact, we do not have to reach the issue of whether rule 4.2 applies when a defendant has retained counsel.[8]

As the state was unaware that the defendant had retained a lawyer, rule 4.2 is inapplicable and the trial court properly refused to suppress the recorded conversations between the defendant and Anglin.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The federal circuit cases cited by both sides discuss the applicability of the Code of Professional Responsibility disciplinary rule 7–104 (A) (1), which was the predecessor of rule 4.2. The two rules are substantively the same.

[8] Since the state was not aware that the defendant was represented by counsel, we do not have to determine at what stage in a criminal investigation rule 4.2 becomes operative. In *United States* v. *Ryans*, 903 F.2d 731 (10th Cir.), cert. denied, 498 U.S. 855, 111 S. Ct. 152, 112 L. Ed. 2d 118 (1990), the Tenth Circuit decided a case that addressed the issue of when a disciplinary rule becomes applicable in a criminal investigation. The Tenth Circuit held that the disciplinary rule 7–104 (A) (1) did not apply to the initial investigatory phase of law enforcement even when the state knows that the suspect is represented by counsel.