DAVID CUMMINGS *v.* TWIN TOOL MANUFACTURING COMPANY, INC., ET AL.
(13865)

O'Connell, Spear and Shea, Js.

Argued September 26, 1995—decision released January 2, 1996

*Richard W. Gifford,* for the appellant (plaintiff).

*William C. Brown,* for the appellees (defendants).

SPEAR, J. The plaintiff, David Cummings, appeals from a decision of the compensation review board (board) denying him temporary total disability benefits pursuant to the workers' compensation statutes. He asserts that the board improperly (1) held that no notice of intention to discontinue temporary total disability benefits was required, (2) affirmed the commissioner's decision despite concluding that she had relied in part on a document that was marked for identification only and had made findings that were beyond the scope of the hearing, (3) affirmed the denial of the plaintiff's motion to submit additional evidence, and (4) affirmed the commissioner's refusal to recuse herself. We affirm the decision of the board.

The record discloses the following factual and procedural history. On December 7, 1984, the plaintiff sustained a compensable injury in the course of his employment and filed a claim for workers' compensation benefits. On May 14, 1990, following a hearing, Commissioner James Metro found that the plaintiff had attained maximum medical improvement from his injuries on October 30, 1986. Metro also found that the plaintiff had a permanent disability of 55 percent of the brain, for which Metro awarded him 156 weeks of specific benefits. Those benefits were paid and are not at issue here. Further, Metro found that the plaintiff had become temporarily totally disabled again on November 6, 1989, and that the disability continued to May 14, 1990. Metro ordered the defendant employer and its defendant workers' compensation insurance carrier to pay temporary total disability benefits for that period. For reasons that are not apparent on the record, the defendants continued to make payments until December, 1991.

After the defendants stopped payments, the plaintiff filed a claim for temporary total incapacity benefits. On June 25, 1992, a formal hearing was held before Commissioner Roberta Smith D'Oyen (commissioner) on the claim for total disability benefits. On October 20, 1992, the commissioner, in dismissing the plaintiff's claim, found that the plaintiff had not been totally or partially disabled from December, 1991, to June 25, 1992. The plaintiff appealed to the board, which affirmed the commissioner's decision. This appeal followed.

"As a preliminary matter, we note that when a decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts." *Vanzant* v. *Hall*, 219 Conn. 674, 677, 594 A.2d 967 (1991). The commissioner must determine the facts. *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988). "The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 118, 411 A.2d 924 (1979). "Our scope of review of the actions of the review [board] is similarly limited." (Internal quotation marks omitted.) *Romanski* v. *West Hartford*, 34 Conn. App. 307, 316, 641 A.2d 439 (1994).

I

The plaintiff first claims that the defendants were required to file a Form 36[1] pursuant to General Statutes § 31-300[2] prior to discontinuing payments pursuant to

---

[1] "Form 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments." *Imbrogno* v. *Stamford Hospital*, 28 Conn. App. 113, 120 n.4, 612 A.2d 82, cert. denied, 223 Conn. 920, 615 A.2d 507 (1992). General Statutes § 31-296 sets forth the contents of this form.

[2] General Statutes § 31-300 provides in pertinent part: "No employer . . . shall discontinue or reduce payment on account of total or partial incapacity

the 1990 award. The plaintiff argues that despite the facts that the award covered a specific time period and that all payments have been made, the defendants were required to file a Form 36 before discontinuing payments.[3] We disagree.

Metro correctly found temporary total incapacity only to the date of the evidentiary hearing, and made no finding of total incapacity beyond that date. A commissioner cannot make a finding of temporary total incapacity beyond the date of the most recent evidentiary hearing. *Neurath* v. *UTC/Pratt & Whitney*, 7 Conn. Workers' Comp. Rev. Op. 99, 100 (1989). "[T]otal incapacity becomes a matter of continuing proof for the period claimed. . . .[A]dditional proceedings are necessary to provide the requisite factual basis for a conclusion of continued total incapacity." Id.; *Besade* v. *Interstate Security Services*, 6 Conn. Workers' Comp. Rev. Op. 83, 87, aff'd, 212 Conn. 441, 562 A.2d 1086 (1989). In the present case, there would have to be a new claim and a new hearing before a finding of total incapacity for any further period could be made.

The plaintiff argues to the contrary in reliance on *Platt* v. *UTC/Pratt & Whitney*, 3 Workers' Comp. Rev. Op. 3 (1985). In *Platt*, the commissioner had awarded temporary total incapacity benefits for a specific period. The defendant discontinued benefits before the termi-

under any such award, if it is claimed by or on behalf of the injured person that his incapacity still continues, unless such employer . . . notifies the commissioner and the employee of such proposed discontinuance or reduction in the manner prescribed in section 31-296 and the commissioner specifically approves such discontinuance or reduction in writing. . . ."

[3] The plaintiff argued in his reply brief that the defendants continued payments beyond the date of the 1990 decision of Metro through December 31, 1991. Even if this is the case, such payments were not made pursuant to the award, nor does the plaintiff claim that they were made pursuant to an agreement. The plaintiff cites no authority for the proposition that the employer must file a notice that it intends to discontinue payments that it is not required to make in the first place.

nation date set forth in the award because the plaintiff returned to work before that date. On appeal to the board, the defendant argued that, although the award had not terminated by its terms, the defendant was entitled to discontinue benefits on the date on which the plaintiff returned to work. The plaintiff argued that the defendant needed to file a Form 36 before those benefits could be discontinued.

The board in *Platt* held that a Form 36 is required to be filed "in certain instances before the employer is allowed to discontinue payments of compensation for total or partial incapacity." *Platt* v. *UTC/Pratt & Whitney*, supra, 3 Workers' Comp. Rev. Op. 6. It explained that a Form 36 is required only where "an employee is receiving compensation for total or partial incapacity under an agreement, oral or written, [or] an award . . . and the employee contends that his incapacity still continues, if the employer intends to discontinue such payments . . . ." Id., 7. Because benefits had been awarded beyond the date on which the plaintiff returned to work, the board found that a Form 36 was required.

*Platt* can be distinguished from the present case. In *Platt*, the defendant sought to terminate benefits that were previously awarded to the plaintiff. To terminate payments prior to the date set forth in the award was tantamount to altering the award without notice or a hearing and without the consent of the commissioner. In the present case, as in *Platt*, the award provided for payment for a definite time period. Unlike the defendant in *Platt*, however, the defendants in this case discontinued payments only *after* making all of the payments ordered in the award.

It is implicit in the statutory scheme that General Statutes § 31-296 does not apply where the award is limited by its own terms. "In construing a statute, common sense must be used, and the courts will assume

that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 126, 584 A.2d 1172 (1991). It would not be reasonable or rational to require a second hearing on the proposed termination of an award that on its face provides for termination on a date certain. "Such a bizarre result could not have been intended by the legislature." *State* v. *Jimenez*, 228 Conn. 335, 341, 636 A.2d 782 (1994).

II

The plaintiff next asserts that the board improperly affirmed the commissioner's decision after striking paragraph eight of her findings, and paragraph C and a portion of paragraph E of her conclusions. The board struck paragraph eight of the commissioner's decision because it was based on a report that was marked for identification only and was not made a full exhibit. The board struck paragraph C and a part of paragraph E because those findings related to the plaintiff's future need for medical care, whereas the sole issue before the commissioner was whether the plaintiff was entitled to temporary total disability benefits from December, 1991, to the date of the hearing. The plaintiff argues that the portions of the testimony remaining after removal of those portions of the decision do not support the board's finding that the plaintiff was not totally disabled from December, 1991, to the date of the hearing. The plaintiff's assertion would place the burden on the wrong party. On a claim for workers' compensation benefits, the burden of proof is on the claimant. *Tovish* v. *Gerber Electronics*, 19 Conn. App. 273, 275, 562 A.2d 76, cert. denied, 212 Conn. 814, 565 A.2d 538 (1989). A claimant must prove that "(1) the workers' compensation commission has jurisdiction over the claim; (2) the claim has been timely brought . . . (3) the claimant is a qualified claimant . . . (4) the respondent is a covered

employer . . . (5) the claimant has suffered a personal injury . . . arising out of and in the course of employment. J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) § 1." Id., 275–76. Further, "total incapacity becomes a matter of continuing proof for the period claimed." *Neurath* v. *UTC/Pratt & Whitney*, supra, 7 Conn. Workers' Comp. Rev. Op. 100; *Besade* v. *Interstate Security Services*, supra, 6 Conn. Workers' Comp. Rev. Op. 87. The defendants were not required to establish that the plaintiff was *not* totally incapacitated from December, 1991, to the date of the hearing. Rather, the burden of proof was on the plaintiff to establish his continuing total incapacity from December, 1991, forward. *Neurath* v. *UTC/Pratt & Whitney*, supra, 100.

As to the issue of total disability, the plaintiff offered the expert testimony of Alan Russakov, a physiatrist, as to the plaintiff's need for continuing treatment. In addition, on the basis of the case summary of John K. Stanwood, a clinical psychologist, the commissioner found that the plaintiff had seen Stanwood for supportive psychotherapy from November 7, 1991, to the date of the hearing, and that the plaintiff was, at the time of the hearing, being seen on only a "sporadic" basis. The defendants did not offer evidence that the plaintiff was not totally incapacitated during the claimed period.

The commissioner specifically rejected Russakov's testimony. She therefore concluded that the plaintiff had not met his burden of proof in attempting to establish his total incapacity during the period in question. The commissioner found that "[n]o evidence was introduced at the formal hearing that the [plaintiff] is now, or was during December 1991 to the present, totally disabled or partially disabled."[4] The commissioner

---

[4] The board stated the following in footnote 2 of its opinion: "In her finding and dismissal, the trial commissioner found that '[t]he opinion of Dr. Alan Russakov concerning total disability of the claimant from December 15, 1990 to the present is not supported by the evidence which was introduced

rejected Russakov's testimony because he failed to document the plaintiff's care, treatment and progress or his opinion as to the plaintiff's total disability for the period from December, 1991, to the date of the hearing. She found that Russakov had testified without medical records, charts or a diary to document frequency of care, quality of care, treatment and progress notes, and that the language of his reports indicated that the care he provided to the plaintiff had changed from "treating" the plaintiff to merely "seeing" him.

The plaintiff argues that the board could not uphold the commissioner's findings and conclusions after striking certain findings because "there was no other evidence in the record indicating that the [plaintiff's] condition had improved since the last hearing, when he was found by another commissioner to be totally disabled." The plaintiff not only attempts to place the burden of proof on the defendants, but also argues that because he offered evidence and the defendants did not introduce any contrary evidence, the court was required to accept his evidence. The law does not support this proposition.

In *State* v. *Blades*, 225 Conn. 609, 625, 626 A.2d 273 (1993), the defendant offered evidence at trial that he suffered from extreme emotional disturbance. The prosecution offered no evidence to the contrary and the defendant was convicted of murder. On appeal, the defendant argued that the trial court improperly concluded that he failed to prove his affirmative defense of extreme emotional disturbance by a preponderance of the evidence.

---

at the formal hearing,' and that '[n]o evidence was introduced at the formal hearing that the claimant is now, or was during December 1991 to the present, totally disabled or partially disabled.' We understand the latter finding to flow from the former and to mean that no *credible* evidence was presented to the trial commissioner to support the claim for temporary total disability benefits during the relevant time period." (Emphasis in original.)

The Supreme Court found that "[t]he essence of the defendant's argument appears to be that, because the state did not present its own evidence to rebut the defense, the trial court was required to accept the defendant's evidence and to find that the defendant had sustained his burden of proof." Id., 627. The court held that "[i]n a case in which the evidence is conflicting, it is the quintessential . . . function [of the fact finder] to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . Despite the defendant's contention to the contrary, the trial court is not required to accept uncontradicted expert testimony. The court might reject it entirely as not worthy of belief or find that the opinion was based on subordinate facts that were not proven." (Citation omitted; internal quotation marks omitted.) Id., 629.

"[T]he trier of fact can disbelieve any or all of the evidence . . . and can construe that evidence in a manner different from the parties' assertions . . . . On this record, we conclude that the trial court could reasonably have concluded that the defendant had failed to prove, by a preponderance of the evidence, the existence of extreme emotional disturbance." (Citation omitted; internal quotation marks omitted.) Id., 629–30.

The plaintiff also argues that erroneously admitted evidence is presumed to have been injurious in its effect, unless the contrary is shown, and that a reversal for admission of improper testimony is required even if the same fact was proven by proper testimony, unless it is clear that the erroneous testimony could not have been prejudicial.

We do not conclude that the removal of the improper findings affected the outcome. Because of the lack of credible evidence, the commissioner did not find that the plaintiff was totally incapacitated for the claimed period. The remaining evidence was not made more

credible by the elimination of the challenged findings. In this case, the plaintiff neither proved his continuing total incapacity, nor demonstrated that he suffered such prejudice from the improper findings that reversal is required. On the record before us, we conclude that, even after striking the improper findings, the board properly affirmed the commissioner's finding that the plaintiff had failed to meet his burden of proving that he was totally incapacitated during the period at issue.

### III

The plaintiff next claims that the board should have granted his request to submit additional evidence. The plaintiff offered two sentences and no analysis in his appellate brief on this issue.[5] "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." *State* v. *Sewell*, 38 Conn. App. 20, 29, 658 A.2d 598, cert. denied, 234 Conn. 918, 661 A.2d 98 (1995); *State* v. *Gaines*, 36 Conn. App. 454, 460, 651 A.2d 1297 (1994). Analysis, rather than mere "abstract assertion," is required in order to avoid abandoning an issue by failure to brief the issue properly. *State* v. *Cain*, 25 Conn. App. 503, 524, 596 A.2d 449 (1991). We decline to review this inadequately briefed issue.[6]

### IV

Finally, the plaintiff claims that the commissioner should have recused herself from his case as a result

---

[5] The entire briefing on this issue is as follows: "The [board] denied claimants' Motion to Submit Additional Evidence stating in its decision that the claimant did not comply with Connecticut State Agencies Regulations § 31-301-9. However, the [board] gave no indication of why the claimant's submission fell short of meeting those requirements, and a comparison of the Motion to the regulation does not yield an answer."

[6] We note that the plaintiff's request to submit additional evidence, dated December 20, 1992, failed to comply with § 31-301-9 of the Regulations of Connecticut State Agencies because he failed to offer any reasons for the

of the plaintiff's alleged ex parte contacts with her over a five month period. Because of those contacts, the commissioner filed a criminal complaint for harassment against the plaintiff.

First, this issue was not presented to or decided by the board. At oral argument in this appeal, the plaintiff stated that part of the evidence that he sought to submit under his request to submit additional evidence was in connection with the issue of ex parte communications between the plaintiff and the commissioner. Neither the request to submit additional evidence nor the amended motion to submit additional evidence, however, mentions the issue of ex parte contacts. The arrest warrant affidavit to which the plaintiff refers in his brief was not submitted to the board or to this court on appeal. The plaintiff did not request that the commissioner disqualify herself until two and one-half months after the commissioner rendered her decision. Further, in his request for disqualification the plaintiff requested that the commissioner "disqualify and remove herself from all *further* proceedings." (Emphasis added.) The commissioner's decision that is challenged on appeal was dated October 20, 1992. Since the request for disqualification was not submitted until January 13, 1993, it does not apply to the decision at issue in this appeal. It is well settled that courts will not review claims of judicial bias where the issue of prejudice was not properly raised in the prior proceedings. *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 615–16, 236 A.2d 466 (1967); *Pagni* v. *Corneal*, 13 Conn. App. 468, 472, 537 A.2d 520, cert. denied, 207 Conn. 810, 541 A.2d 1239 (1988); *Trapp* v. *Trapp*, 6 Conn. App. 143, 145, 503 A.2d 1187 (1986); see Practice Book § 4185. This issue was not properly raised before the commissioner or the board, and is, therefore, not properly before this court.

failure to present the evidence, offered no basis for the claim of materiality, and offered no reasons why the additional evidence was relevant or necessary to the determination of the issues before the board.

Even if this issue had been raised before the commissioner or the board, we would decline to review it because of inadequate briefing.[7] The plaintiff's one paragraph briefing offers no authority or analysis for the proposition that a party can make improper ex parte posthearing contacts with a commissioner, await the decision and, if it is unfavorable, obtain a new hearing on the ground that the party's own improper actions necessitated disqualification of the commissioner.

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.