[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 3, 1997 CT Page 6151
The plaintiffs, John W. Belcher and Carol A. Wilson (plaintiffs), have appealed a decision of the defendant, the Planning and Zoning Commission of the Town of Stafford (commission), granting an application for the construction of a subdivision on land abutting the plaintiffs' property. The parties have filed briefs and argument was heard by the court on February 14, 1997.
PROCEDURAL AND FACTUAL HISTORY
Nicholas P. Hine and Kathleen A. Hine (applicants) filed an application with the commission for the approval of a residential subdivision consisting of six, two-acre lots. (Return of Record [ROR], Item #2; ROR, Item #5; ROR, Item #6, p. 5.) The proposed subdivision lots ("the subject property") are located on the south side of Crooked S Road and the west side of Stafford Street. (ROR, Item #6, p. 5.) Crooked S Road is a steep; (ROR, Item #6, p. 24); curved; (ROR, Item #4; ROR, Item #13); unpaved dirt road with bushes and trees growing to the edge of the road. (ROR, Item #4.) The proposed subdivision plan includes subsurface sewage disposal systems and individual wells for water supply, but does not designate any land for open space for public use. (ROR, Item #3, p. 2.)
Notice of the public hearing to be held on this subdivision application was published in the Journal Inquirer on May 13 and 20, 1995. (ROR, Item #5; ROR, Item #14.) A public hearing on the application was then held on May 23, 1995. (ROR, Item #5.) The plaintiffs' counsel attended the public hearing to express the plaintiffs' objections to the applicants' proposal. (ROR, Item #6, p. 12.) Plaintiffs' counsel also submitted to the commission a list of issues which should be addressed by the commission before granting the application; (ROR, Item #8); and a list of reasons to deny the application, including the applicants' alleged failure to comply with numerous subdivision regulations. (ROR, Item #9.) Letters were also submitted by other neighbors of the subject property, which expressed concerns about traffic, safety and the inadequacy of Crooked S Road, adverse effects on wetlands, the lack of sufficient road frontage property, and the destruction of the rural integrity of the area. (ROR, Item #7.)
The commission voted to approve the applicants' subdivision proposal following the public hearing. Notice of the approval was CT Page 6152 published in the Journal Inquirer on May 25, 1995. (ROR, Item #11; ROR, Item #14.) The only reason provided for the commission's approval of the application was that "[the proposal] was in the best interest of the Town of Stafford." (ROR, Item #11.)
On appeal to the court, the plaintiffs argue that the commission's approval of the applicants' subdivision plan was illegal, arbitrary, and an abuse of its discretion, because: (1) the commission improperly relied on evidence provided to it by the applicants prior to and thus outside of the record of the public hearing; (2) the commission based its approval of the application on a town attorney's opinion letter, which the plaintiffs contend incorrectly stated the law; and (3) the commission failed to enforce several subdivision regulations relating to the general policy behind the regulations, inland wetlands, open spaces, drainage facilities, existing streets, and waiver requirements. (Appeal, pp. 2-3, ¶ 5.)
AGGRIEVEMENT
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). "The question of aggrievement is essentially one of standing." (Citation omitted.) DiBonaventura v. Zoning Board ofAppeals, 24 Conn. App. 369, 373, 573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the court must dismiss the appeal. Id. General Statutes § 8-8 (a) defines an "aggrieved person" as "any person owning land that abuts or is within the radius of one hundred feet of any portion of the land involved in the decision of the board."
During the court hearing of February 14, 1997 the parties stipulated that the plaintiffs are abutting property owners to the subject property. Accordingly, the court finds that the plaintiffs are statutorily aggrieved.
STANDARD OF REVIEW
A trial court may grant relief in an appeal from a decision of an administrative authority only where the authority has acted unreasonably, illegally, arbitrarily or has abused its discretion. Smith v. Zoning Board of Appeals, 227 Conn. 71, 80,629 A.2d 1089 (1993). The court, however, "may not substitute its CT Page 6153 judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers . . ." (Internal quotation marks omitted.) Frito-Lay, Inc.v. Planning Zoning Commission, 206 Conn. 554, 572-73,538 A.2d 1039 (1988). The court simply determines whether the record reasonably supports the conclusions reached by the agency.DeBeradinis v. Zoning Commission, 228 Conn. 187, 198,635 A.2d 1220 (1994).
"The burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991).
In reviewing a subdivision application, the commission acts in an administrative capacity and not as a legislative, judicial or quasi-judicial agency. Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988). The commission, therefore, "has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Id. "If [the subdivision plan] does not conform as required, the plan may be disapproved." Forest Construction Co.v. Planning Zoning Commission, 155 Conn. 669, 675, 236 A.2d 917
(1967).
The commission's action is to be sustained if any one of the reasons stated is sufficient to support its decision. SeeProperty Group, Inc. v. Planning Zoning Commission,226 Conn. 684, 697, 628 A.2d 1277 (1993). Where the zoning commission has not stated the reasons for its decision, the court must review the record to determine whether the decision is supported thereby. A.P W. Holding Corp. v. Planning Zoning Board,167 Conn. 182, 186, 355 A.2d 91 (1974).
The following will address the three issues raised on appeal by the plaintiffs i.e. that: (1) the commission improperly relied on evidence provided to it by the applicants prior to and thus outside of the public hearing: (2) the commission based its approval of the application on a town attorney's opinion letter, which the plaintiffs contend incorrectly stated the law: and (3) the commission failed to enforce several subdivision regulations relating to the policy behind the regulations, inland wetlands, open spaces, drainage facilities, road improvements, and waiver requirements.
(1) Information presented outside of the public hearing CT Page 6154
The plaintiffs argue that their appeal should be sustained because the commission relied on material submitted prior to and outside of the public hearing. Although the plaintiffs have raised this issue, they have failed to brief it.
"Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. Analysis, rather than mere `abstract assertion,' is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citations omitted: internal quotation marks omitted.) Cummings v. Twin Tool Mfg. Co., 40 Conn. App. 36,45, 668 A.2d 1346 (1996) (declining to review an inadequately briefed issue).
The court finds that: (1) nothing in the record suggests that the commission relied on information not properly presented at the public hearing: and (2) the court need not review this issue because the plaintiffs failed to brief it. See also Commission onHuman Rights Opportunities v. Truelove Maclean, Inc.,238 Conn. 337, 354, 680 A.2d 126 (1996) (affirming the judgment of the trial court because nothing in the trial court's decision or in the record revealed that the trial court based its decision on evidence not contained in the administrative record).
(2) Reliance on a town attorney's opinion letter
The plaintiffs contend that the commission placed too much weight on an opinion letter written by town attorney, Thomas J. Fiore, to the town's first selectman, John E. Julian, dated January 6, 1995, expressing Fiore's views that a planning commission could require off-site improvements by a subdivision applicant only if the subdivision roads intersect with public highways and only for health and safety reasons. (ROR, Item #15.) The commission rebuts the plaintiffs' opinion, arguing that: (1) the letter was directed to the first selectman not the commission: (2) plaintiffs' counsel first introduced the letter at the public hearing, not the applicants or the commission; (3) there is no indication in the record that commission members relied on the letter any more than on their own personal observations and knowledge of the area, or that the letter was dispositive to the commission's decision; and (4) in the alternative, the letter contains a correct statement of the law. CT Page 6155
The record indicates that it was the plaintiffs' attorney who first mentioned the town attorney's opinion letter at the public hearing; (ROR, Item #6, p. 13): and who indicated that he thought the letter was a "key issue." (ROR. Item #6, p, 25.)[1] The commission gave the plaintiffs' counsel the opportunity to discuss the substance of the town attorney's letter without expressing the commission's opinion as to the merits of the argument contained in the letter and without indicating the weight the commission intended to give the letter. (See ROR, Item #6, pp. 13, 25.) Nothing in the record suggests that the commission relied primarily on, or gave too much weight to, the town attorney's letter. Moreover, it is within the sound discretion of the commission to assess the weight to be given to the evidence presented before it. See Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 542, 525 A.2d 940 (1989) (stating, "an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair"). The substance of the town attorney's analysis as to road improvements for existing streets will be discussed below; see infra part (3)(d).
(3) Violations of subdivision regulations
(a) General Provisions: Subdivision Regulation § 1.7
The plaintiffs contend that the application violated Subdivision Regulation § 1.7, which provides: "All land to be subdivided . . . shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, drainage and sewerage . . ." This subdivision regulation, which falls under the heading "1.0 General Provisions," merely presents the basic policy behind the town's regulations, and therefore is an insufficient basis for denying the applicants' proposal. "General policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit.TLC Development, Inc. v. Planning Zoning Commission,215 Conn. 527, 530 n. 2, 577 A.2d 288 (1990)." Sowin Associates v. Planning Zoning Commission, 23 Conn. App. 370, 376, 580 A.2d 91, cert. denied, 216 Conn. 832, 583 A.2d 131 (1990).
(b) Report from the Town of Stafford Inland Wetlands andCT Page 6156Watercourses Agency: General Statutes § 8-26; SubdivisionRegulation § 2.9
General Statutes § 8-26 provides: "The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency." Section 2.9 of the subdivision regulations provides: "The Commission shall give due consideration to any report filed with it by the agency prior to rendering a decision on the subdivision . . . The Commission recommends wetlands clearance prior to application for subdivision . . . since no action can be taken by the Commission until a written report has been received from the Wetlands Agency."
The plaintiffs contend that the commission approved the applicants' subdivision plan without the receipt and due consideration of a report from the town inland wetlands and watercourses agency, thus violating the provisions of General Statutes § 8-26 and subdivision regulation § 2.9. The commission denies this allegation, claiming that: (1) the map notations from the inland wetlands agency constitute a report; (2) the commission gave this report due consideration; and (3) due consideration does not mean that approval by the inland wetlands agency is a condition precedent to approval by the commission.
The maps submitted by the applicants along with their subdivision proposal provide the following annotation: "The Stafford Inland Wetlands Commission find that the wetlands boundaries on this subdivision map are substantially correct. Any regulated activity within the designated wetlands areas will necessitate a separate permit from the Stafford Inland Wetlands Commission in accordance with the Connecticut General Statutes." (ROR, Item #3; ROR, Item #13.)
The term "report" has not been conclusively defined, thus what constitutes a report is unclear. See Friends of Eccleston v.Town of Groton, Superior Court, judicial district of New London at Norwich, Docket No. 097441 (May 4, 1992, Mihalakos, J.) (stating, "there is . . . a recognition by our court that the statutory provision [General Statutes § 8-26] does not address what constitutes a "report" or "due consideration"). In the context of a town sanitarian's report as to a sewage disposal CT Page 6157 system, notes written on the plan itself, approving the proposed project, were held sufficient to constitute a "report." SeeRoraback v. Planning Zoning Commission, 32 Conn. App. 409, 415,628 A.2d 1350, cert. denied, 227 Conn. 927, 632 A.2d 704 (1993) (where the court held that a report had been submitted because the "town sanitarian indicated his approval of the proposed site plan by writing `this design is approved' on the plan"). Given the lack of clear direction on this issue and in light of the holding in Roraback v. Planning Zoning Commission, supra,32 Conn. App. 409: the court finds that the notes inscripted on the application's maps, which designate wetland boundaries, are sufficient to constitute a "report."
A question therefore remains as to whether the commission afforded "due consideration" to the inland wetlands agency's report as per the requirements of General Statutes § 8-26. "Due consideration" is not the equivalent of the inland wetlands agency having "veto power over the approval of any proposed subdivision"; Thoma v. Planning Zoning Commission,31 Conn. App. 643, 648, 626 A.2d 809 (1993), aff'd, 229 Conn. 325,640 A.2d 1006 (1994); nor is approval by an inland wetlands agency a condition precedent to the approval of a subdivision application by a planning and zoning commission. Id. Instead, "[t]o afford due consideration is to give such weight or significance to a particular factor as under the circumstances it seems to merit, and this involves discretion. It entails giving such thought or weight to a fact as it merits under all the circumstances of the case. There is no question that the term due consideration requires the zoning commission to do more than simply receive the wetlands report and give it passing notice. The weight or significance to be accorded that report by the zoning commission depends, however, on the application before it; how much weight the report should be given is a matter of discretion for the commission." (Citations omitted; internal quotation marks omitted.) Arway v. Bloom, 29 Conn. App. 469, 479-80, 615 A.2d 1075
(1992), appeal dismissed, 227 Conn. 799, 633 A.2d 281 (1993). See also Arley v. East Hartford Town Planning Zoning Commission,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 501021 (December 21, 1992, Espinosa, J.), quoting Arway v. Bloom, supra, 29 Conn. App. 479-80. In addition, upon reviewing the legislative history of General Statutes §8-26, in Friends of Eccleston v. Town of Groton, supra, Superior Court, Docket No. 097441; the court found that "where the wetland agency has already reviewed an application and approved it, the purpose of section 8-26 is satisfied and the Commission has no CT Page 6158 need to seek confirmation from the agency."
In the present case, there is no indication on the record that the commission did not afford due consideration to the inland wetlands agency report. To the contrary, the report and the plan's impact on inland wetlands were discussed during the public hearing. For example, the commission indicated that the inland wetlands commission "signed of" on the plan when concerns about adverse effects were raised at the public hearing. (ROR, Item #6, p. 43.) In addition, while the commission reviewed maps of the subdivision plan, the applicants' attorney noted that the subdivision was planned in such a way, with two lots sharing a common driveway, as to minimize the subdivision's effect on wetlands. (See ROR, Item #6, pp. 6-7.) In light of this consideration given to the inland wetlands report at the public hearing and that the weight to be given to any inland wetlands report is in the sound discretion of the zoning commission; seeArway v. Bloom, supra, 29 Conn. App. 479-80; the court finds that the commission did give statutory "due consideration" to the inland wetlands report.
(c) Open Spaces: Subdivision Regulations §§ 3.9, 3.10
Subdivision Regulation § 3.9 provides: "Land for . . . open spaces shall be provided and reserved in each subdivision as deemed necessary and in locations deemed proper by the Commission." Section 3.10, permitting waiver of the above open spaces requirement, provides: "The Commission may waive the requirement for open spaces . . . In lieu of providing open space the Commission may accept a fee equivalent . . ."
The plaintiffs contend that open spaces are a threshold requirement under § 3.9 unless waiver is granted. (See ROR, Item #6, p. 47.) The plaintiffs further argue that the applicants' subdivision plan should have been denied for failure to comply with the waiver provisions of § 3.10. The commission concedes that § 3.9 may be waived, but argues that a developer/applicant need not move for waiver if the commission, acting with the discretion vested in it by § 3.9, initially deems open spaces unnecessary.
The court finds that the wording of § 3.9, i.e. "deemed proper by the Commission," demonstrates the discretion invested in the commission as to the need for open spaces in a proposed subdivision. This interpretation is consistent with the holding CT Page 6159 in Paige v. Town Plan Zoning Commission, 35 Conn. App. 646,661-62, 646 A.2d 277 (1994), reversed on other grounds,235 Conn. 448, 668 A.2d 340 (1995); where the court held that a nearly identical subdivision regulation was discretionary. The court explained, "Section 2.3 of the Fairfield subdivision regulations provided that `open spaces . . . shall be provided in places deemed proper by the Commission.' The plaintiffs claim that the failure . . . to provide open spaces was per se fatal to the application . . . [T]his position is incongruous to the plain language of the regulation. The regulation clearly allows the commission to determine the amount of open space required in the subdivision plan as a condition of approval." (Emphasis added.)Id. See also Czyr; Inc. v. Ridgefield Planning ZoningCommission, Superior Court, judicial district of Danbury, Docket No. 189679 (November 7, 1995, Stodolink, J.) (discussing the commission's discretion in determining size and placement of open spaces). In the case at bar, the commission, acting within its discretion, found no need for open spaces. Consequently, a waiver was not necessary.
(d) Existing Streets: Subdivision Regulation § 3.3.6
Section 3.3.6 of the subdivision regulations provides in pertinent part: "Proposed subdivisions abutting existing Municipal streets . . . shall provide for no less than one-half the land required to widen the existing right-of-way to the minimum width appropriate for the street classification given such street . . . by the Commission. The Commission may require that the right-of-way be increased where appropriate to eliminate a dangerous curve or to increase sight distance . . . The existing street to which the proposed subdivision street connects shall be of sufficient width and have a suitable travel way, grade and alignment as determined by the Commission to provide adequate access for fire protection, other emergency, utility and highway maintenance services to the subdivision and sufficient to accept the traffic to be generated by the proposed subdivision street without undue hazards to vehicles and pedestrians. Where such improvements are required the Commission shall not approve a subdivision until such time as a developer has entered into a written agreement with the Municipality . . . to bear the cost (or portion thereof) for street improvements so as to serve the subdivision in a safe manner."
The plaintiffs contend that: (1) a question exists as to how the commission determined the center line of Crooked S Road and CT Page 6160 as to whether the applicants provided enough land from the center line to provide for the expansion of Crooked S Road to fifty feet;[2] and (2) the commission improperly failed to order the applicants to eliminate the bend in Crooked S Road and thereby increase sight distance. The plaintiffs further argue that § 3.3.6 contains vague and ambiguous language.
The commission argues that: (1) the term "center line" should be given its ordinary meaning; (2) the applicants are not required to provide more land for road expansion than that mandated by the regulation; (3) it is the commission's discretion whether to order the elimination of a bend in the road.
The subdivision regulations do not define "center line," nor do they indicate how the center line should be determined. The term, "center line," it appears, was thus given its logical, plain meaning, that is the center of the existing road, by both the commission and the applicants. (See ROR, Item #6, p. 15, remarks of Chairman Francis Benison; ROR, Item #6, p. 17, remarks of Attorney Mark Gilchrest, applicants' attorney.) The subdivision plan does provide for twenty-five feet from the center of the existing road. (See ROR, Item #6, p. 16; ROR, Item #3.)[3]
"The planning commission, acting in its administrative capacity . . . has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Sowin Associates v. Planning Zoning Commission,23 Conn. App. 370, 374 (1990). The court finds that the subdivision application properly conformed to § 3.3.6 by providing twenty-five feet from the center line for the expansion of Crooked S Road.
The parties disagree on the need, under the law, to eliminate a bend in the road to improve sight distance. The plaintiffs contend that § 3.3.6 applies in the present case even though there are no proposed subdivision streets and therefore no subdivision streets will intersect with existing municipal streets. The commission insists that in such situations § 3.3.6 does not apply.
"There is nothing in § 8-25 that authorizes a planning commission to require a developer to improve an existing abutting public highway where no intersecting subdivision streets are being created . . . [T]he statute empowers the planning CT Page 6161 commission to promulgate regulations for proposed streets, especially their safe intersections with existing or proposed principal thoroughfares, and the manner in which they are to be graded and improved and public utilities and services provided."Property Group, Inc. v. Planning Zoning Commission,29 Conn. App. 18, 23, 613 a.2d 1364 (1992), aff'd, 226 Conn. 684, 628 a.2d 1277 (1993). The Appellate Court further noted that "a town could not impose a road improvement requirement on an applicant whose property fronted a town road because the municipality had the obligation to maintain its public roads in a safe condition, and that the planning commission cannot base its decision on the assumption that the municipality will not carry out this duty."Id., 25, citing Pope v. Planning Zoning Commission, Superior Court, judicial district of Middlesex at Middletown, Docket No. 8239 (July 18, 1979). See also Gonthier v. Watertown Planning Zoning Commission, Superior Court, judicial district of Waterbury, Docket No. 119318 (July 12, 1995, Fasano, J.) (General Statutes § 8-25 does not grant a zoning commission the authority to require a developer to improve existing roads if there are no intersecting subdivision streets); Timber Trails v.Planning Zoning Commission, Superior Court, judicial district of Danbury, Docket No. 272170 (September 16, 1992, Fuller, J.) (7 CONN. L. RPTR. 331, 7 CSCR 1178, 1180), aff'd, 226 Conn. 407, 627
a.2d 932 (1993), appeal dismissed in part, sustained in part, Superior Court, judicial district of Danbury, Docket Nos. 310683, 311384 (April 26, 1994, Flynn, J.). Despite lack of clear authority from the state Supreme Court, but in keeping with the holding in Property Group, Inc. v. Planning Zoning Commission,supra, 29 Conn. App. 18; the court finds that the commission's position, i.e. that § 3.3.6 is not applicable in the present case because of the lack of intersecting subdivision streets, is the more persuasive argument. (See ROR, Items ##4, 13.)
The court also finds that even if § 3.3.6 were applicable, the need to eliminate a dangerous curve is within the discretion of the commission. Section 3.3.6 uses the language, "[t]he Commission may require . . . where appropriate," which given its plain meaning, grants discretion to the commission for the necessity to eliminate curves and improve visibility. See also Paige v. Town Planning Zoning Commission, supra,35 Conn. App. 661-62 (discussing similar language, i.e. "deemed proper by the Commission," in regulations dealing with a requirement for open spaces).
At the heart of the plaintiffs' argument concerning the CT Page 6162 applicability of § 3.3.6, it appears, is the plaintiffs' belief that Crooked S Road is inadequate to support a subdivision. At numerous points during the public hearing, plaintiffs' counsel indicated the "unsafe" and "deplorable" condition of Crooked S Road. (See ROR, Item #6, pp. 24-27.) The commission was aware of the character of Crooked S Road when reaching its decision. The record indicates that the members of the commission had personal knowledge of Crooked S Road; (see ROR, Item #6, pp. 40-41); and were provided with testimony and photographs as to the character of the road. (See ROR, Item #6, pp. 27-28, 30, 36; ROR, Item #4.) See Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 547 ("Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial"). In response to the plaintiffs' concerns, however, the commission noted that it did not have the authority to regulate the condition of existing roads, but rather that this power was vested in the commission of public works. (See ROR, Item #6, p. 39.)
The inadequacy of an existing road is an improper ground to deny a subdivision application. "inadequacy of existing public highways is not a valid basis under the subdivision statutes for denying a subdivision application and a regulation allowing denial of an application for that reason exceeds the Commission's statutory authority." Timber Trails v. Planning ZoningCommission, supra, Superior Court, Docket No. 272170 (7 CONN. L. RPTR 331, 7 CSCR 1181-82).
The plaintiffs' final argument as to § 3.3.6 is that the regulation is impermissibly vague, providing little guidance as to how the regulation will be interpreted by the commission. "Subdivision regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similar cases. A commission's regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations." Sowin Associates v. Planning Zoning Commission, supra, 23 Conn. App. 376. Nevertheless, because "[c]onstitutional claims are only decided when a case cannot be decided on nonconstitutional grounds"; Timber Trails v. Planning Zoning Commission, supra, Superior Court, Docket No. 272170 (7 CONN. L. RPTR. 331, 7 CSCR 1180), citing Adolphson v. ZoningBoard of Appeals, 205 Conn. 703, 720, 535 a.2d 799 (1988); and this case can be decided on nonconstitutional grounds; see infra CT Page 6163 part (3)(e); The plaintiffs' argument therefore, need not be addressed.
Accordingly, the court finds that this regulation (3.3.6) is inapplicable to the present case where the record reveals that no proposed subdivision streets will intersect with existing public streets.
(e) Drainage: Subdivision Regulation § 4.7
Section 4.7 of the subdivision regulations provides in relevant part: "The Developer shall submit a drainage analysis map, showing the tributary watershed area and downstream area affected by runoff and the criteria and computations used indetermining the location and size of proposed facilities. In preparing the drainage analysis map and computations, the Developer's engineer shall include in his study the effect of thesubdivision on the existing downstream drainage facilitiesoutside the area of the subdivision." Emphasis added.
Section 4.7.1 provides in pertinent part: "When in its judgment there will be no substantial danger from soil erosion or danger to the public health and safety, the commission may permit the discharge of rivers and large streams in their natural courses and may permit the discharge of storm water and established water courses across proposed lots of one acre or larger in open channels . . ."
The plaintiffs contend that the subdivision application was improperly granted because the applicants failed to submit a drainage analysis map and a study showing the effects of the proposed project on off-site downstream drainage facilities in compliance with § 4.7. The plaintiffs further argue that the requirement of a drainage analysis map is not waivable because § 4.7 is not included in the list of waivable regulations provided in § 5.2.[4] The commission contends that the subdivision plan demonstrates that no new drainage facilities will be constructed, but rather existing waterways will adequately handle drainage for the new subdivision, thus a drainage analysis map need not be submitted because § 4.7 only applies in the event of the construction of new drainage facilities. The court is not persuaded.
The commission has cited no authority for its proposition that the requirement of a drainage analysis map is only CT Page 6164 enforceable if the application proposes the construction of new drainage facilities. Further, the court finds that a complete reading of §§ 4.7 and 4.7.1 means that a drainage analysis map is required under all circumstances so that the commission can determine if new drainage facilities are required or if existing watercourses will sufficiently serve the subdivision. A submitted drainage analysis map also enables the commission to consider the impact of the proposed subdivision on off-site downstream drainage facilities.
In Sowin Associates v. Planning Zoning Commission,23 Conn. App. 370, 580 A.2d 1, cert. denied, 216 Conn. 832583 A.2d 131 (1990), the appellate court addressed the consideration of offsite traffic concerns when reviewing a subdivision application. The court held: "[B]ecause the plaintiff's land is located in a residential zone and its plan was to use the property for residential purposes, the commission could not weigh offsite traffic concerns, municipal services required by the development, property values, or the general harmony of the district when deciding whether to approve the plaintiff's subdivision application. Id., 375, citing TLC Development, Inc.v. Planning Zoning Commission, 215 Conn. 527, 532-33,577 A.2d 288 (1990).
During the court hearing on the case at bar, this court raised the issue of whether Sowin was still good law. The court's own research has determined it is not.
Two years after Sowin Associates v. Planning ZoningCommission, supra, 23 Conn. App. 370, the Supreme Court transferred a case from the appellate court, pursuant to Practice Book § 4023, for which the appellate court had granted certification on the following issue: "Did the trial court err in holding that the Commission could legally require the submission of an offsite traffic study as part of the plaintiff's application for site plan approval of an office building, even though the Commission is precluded from considering offsite traffic impacts under TLC Development, Inc. v. Planning ZoningCommission, supra, 215 Conn. 527, and Sowin Associates v.Planning Zoning Commission, supra, 23 Conn. App. 370?" Friedmanv. Planning Zoning Commission, supra, 222 Conn. 264 n. 2.
The Supreme Court in Friedman v. Planning ZoningCommission, supra, 222 Conn. at 266, explained: "First, the language of a given zoning regulation may, by its textual CT Page 6165 content, limit the scope of the use of traffic considerations. Second, once a zoning authority establishes that a particular use within a zone is permitted . . . a conclusive presumption arises that such a use in general, does not adversely affect the traffic within the zone. Neither of these tenets, however, precludes anexamination into the special traffic consequences of a given siteplan when the applicable zoning regulations permit it." (Emphasis added.) The Court proceeded to hold: "The Rocky Hill zoning regulations required that a traffic study accompany any application for site plan approval. Since the site plan submission did not comply with the requirements set forth in the zoning regulations, the court correctly concluded that the failure to supply the required traffic study furnished an adequate legal basis for the commission's decision to deny the application." Id., 267-68.
The court is aware that Friedman is in regard to a site plan, and this case, like Sowin, is a subdivision approval issue, butSowin relied on TLC which was a site plan issue. In any event, that is a distinction without a material difference. Also, the fact that Friedman concerns a traffic study and the case at bar concerns a drainage map and analysis is also a distinction without a material difference. Friedman clearly overrules Sowin
and holds that a Planning and Zoning Commission is not precluded from considering offsite issues even though the application is for a permitted use. This court concludes that Friedman does not limit consideration of offsite issues to traffic but, rather, permits consideration of all offsite issues including drainage.Friedman rejects the basic principle of the Sowin and TLC
decisions.[5]
The court, therefore, concludes that the Stafford regulations require a drainage map and analysis for the subdivision itself (the showing of swales, etc., is not sufficient compliance) and for the impact of the subdivision on offsite downstream drainage facilities which is a permissible part of the regulations underFriedman, supra.
It should also be noted that the commission may not rely on personal observations of the subject property to resolve such a technically complex issue as the need for drainage facilities. See Feinson v. Conservation Commission, 180 Conn. 421, 427, 429
a.2d 910 (1980) (noting that the Supreme Court has only allowed "lay members of commissions to rely on their personal knowledge concerning matters readily within their competence, such as CT Page 6166 traffic congestions and street safety . . . and local property values") (emphasis added).
Accordingly, the court finds that the applicants failed to comply with §§ 4.7 and 4.7.1 by not submitting a drainage analysis map.
General Statutes § 8-26 provides that the "commission shall state upon its record the reasons for which a waiver is granted in each case." Section 5.1 of the subdivision regulations, in accordance with General Statutes § 8-26, provides that the commission "may waive any requirement of these regulations by a three-quarters vote of all members of the Commission."
Whether the provisions of §§ 4.7 and 4.7.1 are in fact waivable need not be decided at this time because both the applicants and the commission failed to comply with the procedural requirements of the waiver provisions of § 5.1 and General Statutes § 8-26.
Nothing in the record demonstrates that the applicants applied for a waiver of the requirement to submit a drainage analysis map. Additionally, nothing in the record suggests that the commission considered, voted on, or granted a waiver of the drainage analysis requirement of § 4.7.
CONCLUSION
Because the applicants failed to comply with §§ 4.7 and 4.7.1 by not submitting a drainage analysis map, the commission acted illegally, unreasonably and in abuse of its discretion.
The appeal is sustained.
RITTENBAND, J.