[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDA OF DECISIONS
These are four administrative appeals which have been consolidated for hearing purposes. They all arise out of CT Page 3507 applications for the approval of certain water recreation improvement uses at the property commonly known as the Powder Ridge Ski area ("Powder Ridge") in Middlefield, Connecticut. For ease of comprehension the necessary procedural history and facts are each, respectively, stated in one chronological narrative, although all of the procedural history does not apply to all of the files.
Procedural history
In February, 1997, White Water Mountain Resorts of Connecticut, Inc. ("White Water") made application to the Town of Middlefield Inland Wetlands and Watercourse Agency ("Wetlands") for approval of activities affecting wetlands in the construction of a new road an easement on property of Lyman, to access Powder Ridge from South Street; and, for approval of certain other activity at the site. The latter part of the application was subsequently withdrawn.
Coincident with this application to Wetlands, White Water also made application to the Town of Middlefield Planning and Zoning Commission ("Zoning") for approval of an amended special permit and site plan.
Before both Wetlands and Zoning, plaintiff, Middlefield Citizens Action Group and numerous individuals sought status as an intervenor pursuant to General Statutes § 22a-19. Regardless of whether that group ever formally filed for that status in July, 1993, as they have pled, both commissions treated them as intervenors before them.
Wetlands held a public hearing on the application regarding the new road. After close of the public hearing, the commission deliberated. On May 14, 1997 it granted approval to the application before it. Wetlands transmitted a report to Zoning. From these actions an appeal taken by the Middlefield Citizens Action Group and numerous individuals. [Docket No. 82372]
Public hearings were held before Zoning on March 26, April 8, 30, May 8, 22 and 23, 1997. The application was considered at meetings of the commission on June 25, July 23, and 30, 1997.
On June 25, 1997, Zoning passed a resolution in which a finding was made that the application activity "was not reasonably likely to impair or destroy the air, water or natural CT Page 3508 resources of the State." Return 39. From this action an appeal was taken by the Middlefield Citizens Action Group and numerous individuals. [Docket No. 82830]
On July 30, 1997, Zoning voted to approve the application for an amended special permit and site plan approval with conditions. From this action an appeal was taken by the Middlefield Citizens Action group and numerous individuals. [Docket No. 83209]
In December, 1997, White Water made new application to Zoning for water recreational use of Powder Ridge. This application sought to amend existing special permits. It would be, if approved, inconsistent, in part, with the approval granted on July 30, 1997. Public hearing held on this application on January 28, 1998. The application was considered at meetings of Zoning on February 24, March 17, and March 23, 1998. The application was approved with conditions on March 23, 1998. These conditions, among other things, addressed the inconsistencies between the activities approved then and earlier and how the inconsistencies were to be reconciled. Middlefield Citizens Action Group and numerous individuals filed appeal. [Docket No. 085259]
Facts
White Water is the owner of an approximately 240 acre parcel of land which comprises the Powder Ridge Ski Area ("Powder Ridge"). Powder Ridge has operated as a ski area since the early 1960's. In 1971 the prior owners Zemel Brothers, Inc. received special permit and site plan approval to operate the property not only as a ski area but also to have certain mild weather recreational uses and concerts. The access to the property for all of these activities has been Powder Hill Road, which feeds out to Route 147 in Middlefield.
In 1993, White Water (which then held an option to purchase Powder Ridge) made application to Wetlands seeking a permit to construct and maintain certain improvements to the property which were to its end goal of construction of a water park. A water park is an outdoor recreational facility for enjoyment of water resources by large numbers of people. By its nature its usage is in the months of mild climate.
Concurrent with the application before Wetlands, White Water had also applied to Zoning for an amendment to the 1971 special permits regarding summer recreational use of the property to CT Page 3509 permit the water park. That application was withdrawn prior to Zoning action.
The permit before Wetlands was pursued by White Water. Public hearings were held. Ultimately, in 1993, Wetlands granted White Water approval to construct the water park, then proposed to it, subject to many conditions. No appeal was taken from this approval.
As the project stood in 1993 (and up until 1997), the water park proposal of 1993 had Wetlands approval, with conditions, but no Zoning approval. This approval was for regulated activities within the jurisdiction of Wetlands for the construction and operation of a water park at the site. The approval detailed a variety of conditions for compliance, including the further condition requiring the submission to the agency for review and possible modification of the construction plans that would ultimately be submitted for the issuance of the building permit. The agency specified that such construction plans were to include details showing compliance with many of the specific conditions of the permit approval. This subsequent appearance before the agency, according to the terms of the approval itself, was for review purposes.
Subsequent 1993, White Water contracted with The Lyman Farm, Inc. to purchase an easement for the construction of a road as alternative access to the Powder Ridge property. This alternative access was approved by Wetlands in 1997, and is the subject of the docket no. 82372 appeal.
The application to Wetlands in 1997 was filed concurrently with an application to Zoning for site plan approval and a special permit for the construction and operation of a water park. The applicant initially sought (1) the Wetlands agency review of the site plan specifics as directed in the 1993 approval, and (2) approval for certain regulated activities for the construction of a new access road through the Lyman Farms, Inc. property. The applicant then withdrew the first part of the application, namely the request for Wetlands agency review of the site plan specific provisions. Upon withdrawal of those provisions, the Wetlands was then only acting upon an application for certain regulated activities relating to the construction of the new road through the Lyman property. The report of Wetlands to Zoning pursuant to General Statutes § 8-3g addressed that issue. By their withdrawal of those provisions of the application CT Page 3510 from Wetlands' review, White Water presenting has an approval from Zoning for a project that is not exactly the same as the project approved by Wetlands in 1993. Wetlands, in its report of approval to Zoning, stated:
 "This Motion constitutes the Report of the Agency to the Middlefield Planning and Zoning Commission, required by Conn. Gen. Stats. Section 8-3e(a). The applicant has represented to the Agency that the plans submitted to the Planning and Zoning Commission are in conformance with those approved by the Agency in 1993, to the extent of the Agency's jurisdiction, In the event that the application now pending before the Middlefield Planning and Zoning Commission indicates discrepancies with the plans approved by this Agency in 1993, this Agency shall determine its jurisdiction over such discrepancies, and shall determine if they constitute responses to the conditions and modifications of that 1993 approval, or modifications of that approval. If the Agency determines that any such discrepancies constitute material modifications or regulated activities not previously approved by the Agency, the Agency shall require an application for any such modification.
 "This Agency does not expect the Planning and Zoning Commission to attempt to determine the scope of this Agency's authority over the 1993 approval and any responses by the applicant to the conditions of that approval or the significance of any changes to the plans since that approval.
 "Any aspect of the plans submitted to the Commission which conflict with the Agency's approval, if any, remain unapproved by this Agency, and shall not be constructed without further action by this Agency." Record 28, 10-11.
The 1997 Zoning approval contained conditions surrounding a variety of issues attached to the application as it went through the public hearing and deliberation process. Notwithstanding the new access road, the commission addressed its remaining concerns regarding traffic in the approval contained, inter alia, two conditions addressing the issue.[1]
"Condition 7. There shall be no increase in the existing CT Page 3511 annual traffic on Powder Hill the
At these continued public hearings on the 1997 zoning application, a mountain of exhibits were entered by the applicants and the opponents. The applicant submitted traffic, noise, engineering (two: one pertaining to the proposed road work and one pertaining to the proposed site improvements), hydrologic and wildlife studies. Many people spoke on behalf of and in opposition to the application. Both the applicant and the organized group of opponents were represented by legal counsel at the public hearings. Much correspondence was received in favor of and in opposition to the application. Both sides provided Zoning with their own respect rendition of the heritage and history of the Middlefield community and particularly the area around and including Powder Ridge. At the close of the public hearing the commission members deliberated at length before voting on the disposition of the application.
While the first three appeals were pending, White Water decided to go back to Zoning for an amendment to their existing special permit governing summer recreation uses for the property. Neither the new road nor any water park site improvements had been built during pendency of the appeals. The modifications sought in the latest 1998 application included the construction of a kiddie pool and lazy river for use by swim club members, an increase in the number of memberships to be offered, flexibility in the scheduling of summer outings (without exceeding the existing caps on the number of outings), elimination of music concerts, and a cap of 20,000 cars for the summer season, excluding employees and vendors. The existing special permit does not have a cap on traffic volume. The 1998 application was granted approval; among other conditions, it provided that this 20,000 vehicle/season cap would be lifted if final approval (after appeals) was in place for the 1997 application and the new road constructed.
As necessary for the disposition of the various appeals, additional facts pertaining to these matters will be provided.
Aggrievement
"[A]ggrievement must be established at the trial court. It is a question of fact for the trial court to determine. (Citations omitted.) Parcesepe v. Zoning Board of Appeals, 154 Conn. 46, 47
(1967); Primerica v. Planning Zoning Commission, 211 Conn. 85, CT Page 3512 93 (1989).
 "To be entitled to an appeal from a decision of planning or zoning authorities, appellant must allege and prove that they were aggrieved parties. They are required to establish that they were aggrieved by showing that they had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that they were specially and injuriously affected in their property or other legal interest. (Citations omitted.)" Grigorio v. Zoning Board of Appeals, 155 Conn. 422, 424-425 (1967).
The plaintiff, Richard G. Adams testified at the hearing that he and his wife, Merrill R. Adams, own real estate that abuts the subject property. Their deed showing acquisition in 1967 was placed in evidence as well as the Assessor's Maps 1 and 16. Adams identified his lot and the Powder Ridge property. Through him, the deed to the property of John R. and Suzanne Hendley was also placed in evidence. The location of that property on the Assessor's maps was also the subject of Adams' testimony. The court finds that the plaintiffs Richard G. Adams, Merrill R. Adams, John R. Hendley and Suzanne Hendley all own real estate which is within a one hundred foot radius of the property subject of the decisions Zoning rendered in appeals 82830, 83209, and 85259. Therefore, the court finds that these four plaintiffs are statutorily aggrieved in each of these appeals. General Statutes § 8-8(1). The court finds that the same plaintiffs are owners of property which abuts a portion of the land subject of the appeal in the Wetlands case, 82372. Therefore, the court finds that these four plaintiffs are statutorily aggrieved in that case.
In each of these four appeals there are other named plaintiffs, including Middlefield Citizens Action Group, Inc. Because of the statutory aggrievement of Adams and Hendley the court found no need for the plaintiffs to prove aggrievement as to any other plaintiffs (which would have been contested). "Since it is undisputed that one of the individual plaintiffs . . . is aggrieved . . . it is not necessary to resolve whether the other plaintiffs are aggrieved; see Concerned Citizens of Sterling,Inc. v. Connecticut Siting Council, 215 Conn. 474, 479 n. 3,576 A.2d 510 (1990); and we refer herein to all the plaintiffs as the plaintiffs." Protect Hamden/North Haven from Excessive Traffic CT Page 3513Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,529 n. 3 (1991). Therefore, in this decision, as to all four appeals the court refers to all the plaintiffs as the plaintiffs, for there is no need to resolve whether the balance of the plaintiffs are aggrieved.[2]
Score of Review
In considering the issues presented in these appeals, the court must not substitute its judgment for that of the commission[s].
 "It is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after full hearing . . . As the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Citations omitted.) Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 731-32, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 566 A.2d 1024 (1989). The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540, 525 A.2d 940
(1987). `[E]vidence is sufficient to sustain an agency's finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred.' Mobil Oil Corp. v. Zoning Board of Appeals 35 Conn. App. 204, 209, 644 A.2d 401
(1994).' Connetta v. Zoning Board of Appeals, 42 Conn. App. 133, 137-38, 677 A.2d 987
(1996). Where the board states its reasons on the record we look no further. Westport v. Norwalk, 167 Conn. 151, 162, 355 A.2d 25 (1974)." Jaser v. Zoning Board of Appeals, 43 Conn. App. 545, 547-48 (1996).
 Docket 82372
The plaintiffs have briefed five issues in this Wetlands appeal. All other issues raised in their appeal but not briefed are deemed abandoned and therefore not addressed by the court.Timberland Development v. Planning Zoning Commission,43 Conn. App. 606, 610 (1996). The five issues asserted by the plaintiffs CT Page 3514 in their brief are that: (1) the Agency's reliance on a representation of the applicant denied the public and the plaintiffs of a fair public hearing; (2) the Agency's acceptance of ex parte information from the applicant through the Agency's engineer deprived the plaintiffs and the public of a fair hearing; (3) the Agency could not find that there was not a feasible prudent alternative since, among the feasible prudent alternatives presented was one that the Agency approved in 1993; (4) the Agency's findings were not supported by the record; and (5) the Agency was predetermined to approve the application.
(1) It is the plaintiffs' assertion that they were denied a fair hearing because the Wetlands agency did not hold a hearing on the representation made by the applicants that the application before Zoning was in conformance with the 1993 approvals from Wetlands. The plaintiffs can point to no law which would suggest that they were entitled to be heard on that reliance. Further, notwithstanding the plaintiffs' protestations to the contrary, Wetlands did preserve the issue for later review, and, if necessary, hearings. The written transmittal from Wetlands to Zoning stated: "[i]n the event that the application now pending before the Middlefield Planning and Zoning Commission indicates discrepancies with the plans approved by this Agency in 1993, this Agency shall determine its jurisdiction over such discrepancies . . . . if the Agency determines that any such discrepancies constitute material modifications or regulated activities not previously approved by the Agency, the Agency shall require an application for any such modification." Record 28. The only action taken by Wetlands in the subject approval is certain regulated activities relating to the construction of the new road.
An applicant may withdraw a portion, or all of an application pending before a commission. The Supreme Court implicitly approved the right to withdraw an application in M L Homes,Inc. v. Zoning Planning Commission, 187 Conn. 232, 240-241
(1982). The court there found that the applicant had withdrawn, eliminated from consideration, its application then pending before the defendant commission. The court found that, by the withdrawal of the application, that it was no longer pending before the commission and, therefore, the Commission need not act. Here, the withdrawal from the Agency's consideration by the applicant of all of the applications but the road activity removed the withdrawn provisions from the purview of the Agency. It was no longer before it for consideration. CT Page 3515
(2) In its second issue, the appellants argue that the Wetlands Agency accepted ex parte information after the public hearing was closed from their engineer and that this constituted a deprivation of their right to a fair hearing. The record discloses that after the close of the public hearings, the Agency deliberated on the application. One of the issues they examined was the drainage calculations of the expected run-off from the new road. The public hearing was closed on April 23, 1997. Following the public hearing, a discussion ensued among the Agency members as to whether an additional discharge location should be required. On May 9, 1997, the Agency's own expert, Brian Curtis, a professional engineer with Nathan L. Jacobson 
Associates, Inc. presented a memorandum to the Agency, which was written in response to a letter from an Agency member. The member requested an explanation of a `perched water table' and also ". . . to discuss, should the Agency so require, potential areas for an additional discharge points for stormwater intercepted by the drainage swale located uphill of the proposed access road." (Exhibit 27). The memorandum is a technical analysis of these issues. On May 14, 1997 at its regular meeting, the Agency discussed both an additional discharge point and an underdrain. The discussion discloses that while their engineer had provided technical recommendations regarding an underdrain, the Agency had no input from a hydrologist as to its effect. In the motion which was ultimately approved, the underdrain proposal was not a part of the approved application. Information of a technical nature received the Agency's own engineer does not constitute ex parte communications. Pizzola v. Planning Zoning Commission,167 Conn. 202, 208 (1974). It was mentioned at the May 14, 1997 meeting by the town's engineer that the town's expert discussed the concept of an underdrain with the applicant's engineer. This is mentioned in one passing statement in a long discussion with the commission. This idle comment is in no way analogous to the ex parte information in Pizzola, where the commission improperly requested a traffic report from the applicant after the close of the public hearing, which was utilized in the commission's decision-making. This passing comment by the engineer is not an ex parte communication. Further, ironically, the Agency chose not to include the underdrain concept as a part of its approval. Therefore, if, in fact, the engineer's comment did constitute an ex parte communication, the commission has discharged its obligation under a shifted burden of proof and has demonstrated that no prejudice has occurred to the appellants. The underdrain died in discussion. Blaker v. Planning Zoning Commission, CT Page 3516212 Conn. 471, 479-480 (1989).
(3) The appellants' third argument is that the Wetlands agency could not find that there was no feasible, prudent, alternative since, among the feasible, prudent, alternatives presented was one that the commission approved in 1993.
General Statutes § 22a-41(b)(1) provides, "[i]n the case of an application which received a public hearing pursuant to (A) subsection (k) of section 22a-39, or (B) a finding by the inland wetlands agency that the proposed activity may have a significant impact on wetlands or watercourses, a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist. In making his findings the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record in writing."
The agency did consider the alternative of access, as approved in 1993, for access to the site by Powder Hill Road and the existing driveway. The agency found that this was not prudent "for both reasons of preserving or enhancing the quality of life for the neighborhood along Powder Hill Road, and improving traffic safety and flow on Powder Hill Road." The agency considered adverse safety and traffic impact against the intrusion on the wetlands, which it characterized minimal. Therefore, the Wetlands agency rejected this alternative as not prudent.[3]
The appellants also argue that the agency failed to consider other alternatives that were presented to them at public hearing by Paul Pizzo. Evidence in the record discloses that Mr. Pizzo's alternative suggestions were discussed at public hearing. The applicant raised the concern that the alternatives would result in at least the same if not greater interruption to the wetlands and may result in a traffic danger by a sharp road curve. The Agency had several alternatives before it at the time of its decision. The Agency's engineer, after providing analysis for the agency of the various alternatives that had been presented, recommended the alternative ultimately approved by the agency. "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but `the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . (quotations omitted). Huck v.CT Page 3517Inlands Wetlands Watercourses Agency, 203 Conn. 525, 542
(1987). The Agency made a written finding that no prudent alternative existed to the applicant's proposed activity, which it approved. (Exhibit 28, p. 4). This finding has substantial basis in the record. Where there is a reasonable basis in the record, the court cannot and will not substitute its judgement for that of the commission. Feinson v. Conservation Commission,180 Conn. 421, 425 (1980).
(4) The appellants argue that the Agency's findings were not supported in the record. Specifically, the appellant claims that there was no support in the record for the Agency's reliance on the applicant's representation that it was withdrawing a portion of the application. The record shows quite the opposite. This shoddy shotgun approach to an appeal is not to be condoned. A review of the record discloses that Exhibit L is a letter with attachments from the applicant's attorney to the Agency in which the opening sentence is, "White Water Mountain Resorts of Connecticut, Inc. (the "Applicant") hereby withdraws from its previously filed requests all portions thereof related to the fulfillment of the conditions attached to the existing approval granted to it in October, 1993, by the Middlefield Inlands Wetlands and Water Courses Agency (the "Agency")." Certainly, this is sufficient support in the record for the Agency to rely on regarding the partial withdrawal of the application.
The April 23, 1997 public hearing was not fully preserved by tape and transcription. The Agency's counsel took on laptop word processor, prolific and detailed notes of that hearing, including detail as to the identity of each speaker was and what they said in a manner which, when printed, appears to be close to verbatim. These notes were utilized as a part of the return of record in this case by court order. Appellants can point to no statements, ideas, or issues that were omitted marginalized, improperly characterized or otherwise not comprehensively reported. Now appellant argues that it is ineffective for the Agency, in its approval, to order that the applicant comply with all agreements made by it at public hearing. Appellants argue that there is no substantial basis in the record for this part of the approval because of the failure to wholly preserve the April 23, 1997 public hearing by tape and transcription. Since the appellant offers no legal authority or basis in fact argument, it fails.
(5) The appellant argues that the Agency was predetermined to approve the application. Appellants' apparent argument for a CT Page 3518 finding of predetermination is that no other rational explanation can explain the approval and findings made therein. Since argument has no basis in law or fact, it also fails.
ORDERS
Having considered all of the appellants' arguments in support of their appeal, the court finds that there is substantial basis in the record to support the decision of the defendant Agency. Their decision was not arbitrary, capricious, illegal or an abuse of discretion. The appeal is dismissed.
 Docket No. 82830
In this appeal, the appellants claim that the Zoning Commission erred in its vote on June 25, 1997, in which it found that the application before it was not reasonably likely to unreasonably impair or destroy the air, water or natural resources of the State. The appellants claim the commission erred because the transmittal from the Wetlands Commission did not satisfy the requirements of General Statutes section 8-3(g)[4]. Further, appellants argue that the zoning commission was aware that the Wetlands Agency report "was based on an illegal and void proceeding before the wetlands commission."
The defendants preliminarily argue that the vote of the Zoning Commission on June 25, 1997 did not constitute a vote from which a right of appeal lies. The vote was made in recognition of the statutory mandate of General Statutes § 22a-19[5]. Individuals and a group of individuals had invoked the provisions of that statute by way of their intervention. The Zoning Commission was therefor required to consider whether approval of the application would have the result of unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state. On June 25, 1997, the Commission voted that these effects would not result if the application were approved. Had the Commission found the opposite, then, it would have been required to consider feasible and prudent alternatives. The vote of June 25, 1997 was a threshold determination of the considerations required by General Statutes § 22a-19.
The right to appeal the decision of a land use commission is derived from statute only. Schwartz v. Hamden, 168 Conn. 8, 10-11
(1975). General Statutes § 22a-19 provides a mechanism for CT Page 3519 interested persons to intervene and be heard at administrative hearings regarding environmental issues, and it mandates that environmental concerns be given appropriate consideration in the hearing process. That occurred here, before the Zoning Commission. This particular appeal was initiated by the intervenors who complained of a finding by the Commission, but not the ultimate decision rendered by the Commission.
General Statutes § 22a-19 provides no right of appeal. This court adopts the sound reasoning and arguments of another trial court, Pickett, J., in its finding that intervenors are not granted a right of appeal by General Statutes § 22a-19. "In order for the plaintiffs to appeal pursuant to General Statutes § 22a-19, they must intervene in an underlying judicial review of an agency action. `While intervenors can file a petition in someone else's appeal, section 22a-19 applies to judicial review of an administrative proceeding, which means that unless a conventional appeal has been filed under section 8-8, there is no proceeding to intervene under section 22a-19, and there is no right to appeal created by section 22a-19.' Fuller,Connecticut Practice Book, Vol. 9, sec. 32.6, p. 546 (1993); see also Doyle v. Comm'r of Environmental Protection,3 Conn. L. Rptr. 463, 465, 1991 WL 58460." Roth v. Woodbury Zoning Board ofAppeals et al, 21 Conn. L. Rptr. No. 8, 281 (1998).
The right of appeal from a decision of a zoning commission is granted and circumscribed by the language of General Statutes § 8-8 (a) "Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." The vote of June 25, 1997, resolved the following: "At its June 25, 1997 meeting the Commission finds that: 1. The application for White Water Mountain Resorts of CT, Inc. is not reasonably likely to unreasonably impair or destroy the air, water, or natural resources of the State." No decision was made on the White Water application with this finding. It is a priori that interlocutory appeals are not permitted. Papa v. ThimbleCreek Condominium Assn., Inc., 50 Conn. App. 139, 143,716 A.2d 947 (1998). Therefore, in order for a decision of a zoning commission to be appealed under General Statutes § 8-8, the decision must be a final decision. Neither that statute nor its chapter provide a definition of decision. Elsewhere, in the Uniform Administrative Procedure Act provisions (General Statutes § 4-166 et. seq.) "final decision" is defined. Specifically, CT Page 3520 it does not include a preliminary ruling. While the action of June 25, 1997 is more akin to an interlocutory finding, it is certainly nothing more than a ruling preliminary to the final decision on the White Water application. This court notes as well that appeal by the same parties was taken from that decision (#83209) and the appellants specifically incorporate their brief from this case into their brief from that case, precisely because the issues they choose to raise here are raised after the final decision of the zoning commission in that appeal.
ORDERS
The court lacks subject matter jurisdiction over the appeal. The appeal is dismissed.
 Docket No. 83209
I. In this appeal, the plaintiffs have claimed that General Statutes § 8-3(g) was violated. (This is the incorporation of the issues raised in docket no. 82830). The plaintiffs claim that the communication from the Wetlands Agency was insufficient to satisfy the requirements of General Statutes § 8-3(g) and the Zoning Commission, therefore, did not have an adequate report from the Wetlands Agency before it when it voted approval. In docket no. 82372, the court has determined that the appeal based upon the adequacy of the report from the Wetlands Agency fails. That reasoning will not be repeated but is embraced by reference. Further, the Zoning Commission cannot be held to do the work of the Wetlands Agency. It is not within the jurisdiction of a zoning commission to regulate the work of a wetland agency. This is not within the powers granted to it by statute. See General Statutes § 8-1 et seq. General Statutes § 8-3(g) requires that the Zoning Commission not act on the application "until the inland wetlands agency has submitted a report with its final decision." This mandate was met by the Zoning Commission. Therefore, the argument fails.
II. The appellants also claim that the approval is void because of an ex parte communication after the close of the public hearing. Subsequent to the close of the public hearing, a newspaper advertising supplement sponsored by White Water was published in a local paper regarding the proposed development. It was not transmitted to the Commission or commissioners. By correspondence, the Commission attorney cautioned any member who had seen the supplement to so indicate on the record and whether CT Page 3521 the member could disregard it.[6] If the member could not disregard it, the Commission members were advised to then disqualify themselves. No Commission member disqualified themselves.
The appellants point to no case law which suggests that contents of newspapers of general circulation constitute ex parte communications to members. The case law dealing with ex parte communications and ex parte evidence reference situations where there has been direct written or verbal communication with hearing officers. Henderson v. Department of Motor Vehicles,202 Conn. 453, 461 (1987). The burden of proof that an ex parte communication occurred rests with the plaintiffs. Blaker v.Planning Zoning Commission, 212 Conn. 471, 478 (1989). The plaintiffs have not met the burden of establishing the communication of the newspaper supplements even reached commissioners as members of the general public. Therefore this argument fails.
III. The appellants claim that the approval is void because the conditions imposed as part of the approval are beyond the Commission's authority, and that the condition was not the subject of notice or public hearing. The condition at issue requires the applicants to design the construction of a cul-de-sac for a permanent or seasonal road closure of a portion of Powder Hill Road and the conveyance of the applicant's rights in the roadbed and easements to the Town. Additionally, if the Town discontinues or seasonally closes the road the applicant is required to perform the construction work.
The appellants argue that the approval granted conditioned upon the closure of Powder Hill Road. This, however, is not so. The decision of the Zoning Commission provides approval whether or not Powder Hill Road is closed. The approval condition andantes certain work to be done by the applicant for the Town's consideration of discontinuance or seasonal closure, and, certain work to be done by the applicant, if the Town chooses to discontinue or seasonally close the road. The decision did not condition the approval on the Town's discontinuance or seasonal closure of the road. Therefore, the approval is not subject to a condition beyond the authority of the Zoning Commission.
The application before the Commission was for site plan approval and issuance of a special permit. "A special permit allows an applicant to put his or her property to a use that is CT Page 3522 expressly permitted under the regulations. Beckish v. Planning Zoning Commission, 162 Conn. 11, 15, 291 A.2d 208 (1971). `[T]he conditions under which a special [permit] is allowed must be found in the regulations and cannot be altered; and if a condition is imposed by a commission without being warranted by the regulations, it is void.'" Hochberg v. Zoning Commission,24 Conn. App. 526, 529 (1991).
The off-site improvements as contained in condition no. 8 of the approval required (1) engineering design, and (2) the actual construction work for the creation of a hammerhead or cul-de-sac (and a gate) on Powder Hill Road, a public highway of the Town of Middlefield. If the Town does not discontinue Powder Hill Road or close it for seasonal improvement, then, instead, the applicant must perform certain improvements to the road. The commission and applicant contend that the Zoning Regulations of the Town of Middlefield permit this condition. The regulations provide:
 "The Planning and Zoning Commission may, upon application authorize the issuance of special permits where required for specific uses within these regulations. In authorizing the issuance of a special permit, the Commission shall take into consideration the public, health, safety and welfare and shall prescribe appropriate conditions and safeguards to insure the accomplishment of the following objectives: . . . (3)(a) the location and size of such use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that pedestrian and vehicular traffic to and from and in the vicinity of the use will not be hazardous or inconvenient to, or detrimental to the character of the said residential district or conflict with the traffic characteristics of the neighborhood." (Return 49, IV-1).
The regulations themselves do authorize condition no. 8, because they confer upon the commission the right to impose conditions which address traffic concerns as described in the regulations. A review of the transcripts of the public hearings and the deliberation of the commission confirms that traffic considerations regarding Powder Hill Road were of paramount concern in weighing the application. The contemplated cut-off of Powder Hill Road as an access way to the subject property was a direct response to the concern that it would remain a favored way CT Page 3523 to reach the property despite the construction of a new road.
Condition No. 8 is validly imposed under the regulations of the Town. However, the appellants, without further discussion, argue that the condition remains beyond the scope of the power of the Commission. This is so, then, only if the application of the zoning regulation for the requirement of off-site road improvements is beyond the authority granted to the Commission by statute. This remains an unresolved question in Connecticut.
Initially, the Supreme Court undertook to answer this very question when it granted certification of the appeal in the matter of Property Group, Inc. v. Planning Zoning Commission,226 Conn. 684 (1999). The certified question, "Under the facts of this case, did the Appellate Court properly conclude that the planning and zoning commission did not have the authority to condition its approval of the plaintiff's subdivision application on the plaintiffs widening of a public highway abutting the proposed subdivision?" was never answered. The Court never reached that question because a preliminary inquiry into the facts disclosed that the regulation of the town required a finding that the improvements required were reasonable and necessary and that threshold inquiry was not satisfied. The manner of the inquiry in that case, however, is instructive here.
First, this court must look to the statutory enabling legislation for the Commission's oversight of site plan and special permit applications. General Statutes § 8-3(g) governs site plans and § 8-3c governs special permits. Nothing in the language of either statute confers the right on the Zoning Commission to condition approval on off-site road improvements. The Legislature at General Statutes § 8-2
authorized a zoning commission to adopt regulations regarding these procedures (among others.) This statute authorizes a town to adopt regulations which ". . . may provide that certain . . . uses of land are permitted only after obtaining a special permit or special exception from a zoning commission . . . the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . . . "Such regulations shall be designed to lessen congestion in the streets. . . ." The question before the court is whether this enabling legislation authorizes the defendant Commission to apply its regulation similarly written to require off-site road improvements. CT Page 3524
By analogy, this issue has arisen where there is a contemplated subdivision of land and, as a condition of approval, the planning commission has required off-site road improvements. There, General Statutes § 8-25 requires the adoption of regulations for the subdivision of land by the commission. The regulations shall require adequate provision for the protection of the public health and public safety of the community and may specify the "extent to which and the manner in which streets shall be graded and improved. . ." Trial courts have held that the enabling legislation regarding subdivisions does not authorize the imposition of an obligation to perform off-site road improvements as a condition of approval. Belcher v. Planning andZoning Commission, 1997 Ct. Sup. 6150, 19 CLR 505 (1997); Gonthierv. Watertown Plan. Zon. Comm., 1995 Ct. Sup. 793, ___ CLR ___ (1995);Timber Trails Corp., et al. v. Planning and Zoning Commission,7 CSCR 1178 (1992). The reasoning in these cases is sound and equally applicable to site plan and special permit oversight by a commission. If the Legislature had intended to authorize commissions to order the performance of off-site road improvements as condition for approval of special permits or site plans it could have so specified within the statutory theme. The court will not expand the language of the statutes to find authority where it has not been granted. The provisions of Condition 8 which requires the performance of engineering work for the creation of plans for a hammerhead or cu de sac on Powder Hill Road and the construction of these improvements and the erection of a gate are void; they are off site road improvements not authorized by statute, and, therefore the zoning regulations cannot be read to permit them either.
The provisions of Condition 8 which require the applicant to ". . . convey to the Town the rights necessary to construct such cul de sac. . . ." remains undisturbed by this ruling. Reed v.Planning Zoning Commission, 208 Conn. 531, 437 (19).
The defendant applicant and the Commission argue that a finding that the off site road improvement components of condition 8, in whole or in part, is void does not result in a reversal of the entire approval. They argue that the approval of the Commission provided for severance and therefore the provision was not integral to the approval. The severability provision in the language, however, was to provide for different off site provisions if the Town did not approve discontinuance or seasonal closing of Powder Hill Road. The approval did go on to state CT Page 3525 "[i]n any event, the existing access to the property shall be permanently closed to all traffic by means of a locked security "breakdown" gate. . . . All future access shall be over the proposed new access road from South Street." The Commission provided two alternative ways to assure that traffic to the site would no longer travel over Powder Hill Road. The intent to control traffic by the cul de sac is achieved as well by the locked gate on the applicant's property. "The imposition of the void condition[s] does not necessarily render the whole decision illegal and inefficacious." Becker, op. cit., p. 18. The court notes that the plaintiffs have neither briefed nor argued this issue. The court finds that the void conditions found in condition number 8 are not integral to the entire approval, for the commission has prescribed an alternative means for the cessation of traffic to the site for the uses approved by the commission. So much of condition 8 that required engineering plans and construction of off-site road improvements on Powder Hill Road are void and of no force. Parish of St. Andrew's Churchv. Zoning Board of Appeals, 155 Conn. 350, 354 (1967).
The court need not reach the argument raised by the appellants that notice was not given regarding the proposed cul de sac in light of the above ruling. The court would note, however, that the cul de sac was discussed at the public hearing and the plaintiffs had adequate opportunity to be heard regarding this issue. This argument would not withstand scrutiny.
IV. The appellants urge that another condition is unenforceable and therefore the approval is void. The condition complained of here is the requirement that there be no increase in the annual traffic on Powder Hill Road north of South Street or Long Hill Road attributable to the approved uses of the property. The specific condition states, "[t]here shall be no increase in the existing annual traffic on Powder Hill Road north of South Street or Long Hill Road attributable to the use of the property, such increase to be indicated by traffic counts and, if necessary, monitoring of origin and destination at the Powder Hill Road/South Street intersection, or elsewhere, as required." The approval goes on to dictate that "[i]t is the responsibility of the applicant to do whatever is necessary to comply with these standards." The appellants argue this provision is enforceable and, therefore, void. No law is cited to support their argument. The argument essentially is that there are no traffic counts for a baseline of operation. A review of the record discloses that the Commission had before them traffic counts for Powder Hill CT Page 3526 Road by Hasketh Associates. There is, then, a substantial factual basis in the record for the Commission to have relied on in imposing this condition. The condition language also is comprehensive enough that it imposes the burden for all future compliance to be met by the applicant. There is nothing in the law which would prevent those obligations from including a further annual traffic survey to be accomplished before the approval application is put into effect. There is no question, as a matter of law, of the authority of the Commission to impose this condition to ensure that the permitted activity complies with the zoning regulations of the Town. Floch v. Planning and ZoningCommission, 38 Conn. App. 171, 175 (1995). This argument fails.
V. The appellants claim the approval is void because it contains a condition which is hazardous, inconvenient to, and detrimental to the character of the residential district and conflicts with traffic characteristics of the neighborhood. This argument is stated by the plaintiffs in their brief without further analysis or citation of authority.
"Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . Analysis, rather than mere `abstract assertion,' is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citations omitted; internal quotations marks omitted.) Cummings v. Twin Tool Mfg.Co., 40 Conn. App. 36, 45 (1996).
This issue has not been properly briefed and is deemed abandoned. As a practical matter, it deals with the road closure issue which has already been disposed of supra.
VI. The appellants claim that the approval of the Commission is void in that it violates section 10.02.02 of the zoning regulations. The condition at issue states: "The Special Permit shall not be final until the final determination by the Commissioner of the Department of Environmental Protection to issue approval(s) for the renewal and modification of permits for the discharge of domestic sewerage from the Powder Ridge Resort, and no Certificate of Zoning Compliance shall be issued until final construction plans and specifications are approved by the Department of Environmental Protection."
Section 10.02.02 of the zoning regulations governs site CT Page 3527 development plan requirements. In pertinent part it provides: "Applications submitted shall include a description of all proposed uses and a site plan showing the subject lot and all structures. . . . Site plans shall include the following: "(8) In the case of uses requiring approval of any Department of the State of Connecticut, prior approval of said Department." It also requires "(10) A statement of proposed method of sanitary waste."
The applicant presently is functioning at the subject site under an expired waste water permit granted by the Department of Environmental Protection. However, the applicant has file for a renewal or renewal with modification of the permit and that renewal application is pending before the Department of Environmental Protection. (Return #31, A, sec 12). No information was received by the Commission that the applicant's authority to continue to discharge waste under that permit has been terminated. Further, the record discloses that DEP knew the existing permit was expired and was recommending modifications to the permit while the property was utilized. Return, Exhibit 23 W, X.
Section 02.21.01 of the zoning regulations defines "use" as, "Any activity, occupation, business or operation carried on, or intended to be carried on, in a building or other structure or on a tract of land." The subsurface discharge is not a use under this definition. Indeed, a review of section 8 of the regulations where principal and accessory uses are listed do not include a subsurface sewage system. Undoubtedly, however, virtually every inhabited parcel has such a system where there are no public sewers.
Condition 13 does not reference section 10.02.02 of the Regulations. The court finds that there is sufficient basis in the record for the Commission to conclude that sufficient Department of Environmental Protection authority was granted by the applicant's operating under the existing permit to find that 10.02.02 had been complied with. Since a modification of that permit was sought by the applicant it is appropriate for the Commission to confirm either it or a renewal was granted by this condition On the other had, the appellants have failed to point to anywhere in the record that the court could find that 10.02.02 was not complied with by virtue of the existing permit. The argument fails.
ORDERS
CT Page 3528
The court orders that so much of condition 8 of the approval that requires the applicant to perform engineering, plan drawing or construction for off-site road improvements is void and of no force. The court denies the balance of this appeal.
 Docket No. 085259
As related under the statement of facts at the beginning of this memoranda, this appeal addresses a separate application and approval. The applicants, White Water, made application on December 15, 1997 to amend the existing 1971 special permits for mild weather recreational use of the Powder Ridge property.
The existing permits granted, in part, in June, 1971 and, in part, in September, 1971 allowed: a swim club with a maximum of 200 members; a maximum of 25 outings or picnics with no more than 2,000 people at each event and no more than 2 events per week; a maximum of 35 meetings, conferences, exhibits or theater performances to a maximum of 2,000 people per event with no more than 3 events per week; and, it is disputed whether it permitted a maximum of 3 concerts, with no more than 4,400 people at each concert. The plaintiffs also disputed the validity of the 1971 permits in their entirety, arguing that their research disclosed that the certificate for them was not properly lodged in the Town Hall 37 years ago. The court has reviewed the briefs of both parties on this issue. The plaintiffs do not prevail. There is no statutory requirement for the recording of special permits. That records do not exist which the Town had the authority to purge, does not erase the actual grant of the special permits, as evidenced by the site plan approval which was recorded and minutes which reflect the actions taken.
The appellants raise the same argument here regarding the DEP discharge permit that it raised in docket no. 83209. The memorandum of this court regrading that issue in that docket number (supra) contains the courts findings and reasons for this argument as well. Further, the applicant had received correspondence from the DEP that the modified design would address inadequacies in the current system and satisfy the requirements of the pending application. (Return 16, p. 2). This likelihood of DEP approval of the modification was before the Commission. The condition imposed was satisfactory. Kaufman v.Zoning Commission, 232 Conn. 122, 163 (1995). CT Page 3529
The appellants also challenge condition 8 of the approval, which creates limits on noise levels at the property boundary and requires the applicant to report yearly at season's end regarding noise measurements. The condition is not inconsistent with State noise requirements and support in the record. There is no legal basis that the plaintiffs assert for their challenge to this condition supported in the record. The plaintiffs' argument fails.
The application, which was approved by the Commission and is the subject of this appeal amended the permit to allow: a swim club with 300 family memberships, the construction of a lazy river and kiddie pool to be used by the swim club members and group events, a maximum of 25 outings or picnics, with no more than 2,000 people at each outing or picnic with no prescription or limitation on when they can be scheduled; a maximum of 35 meetings or conferences or exhibits or theater, with no more than 2,000 people at each event, with no prescription or limitation on scheduling; an elimination of the permit for concerts; and a cap of 20,000 vehicle trips to the site, exclusive of employees, maintenance vehicles, and vendors, during the period from May to October 1 each year.[7] Public hearing had been held by the Commission on the application. The applicant presented experts in all fields concerning the application, including traffic and noise. Opposition to the application was strenuous. Opponents presented an expert noise engineer as well. Exhibits were entered into the record from the traffic and noise engineers as well as a variety of other sources.
The appellants raise numerous issues in its appeal of this approval by the Planning and Zoning Commission.
The plaintiffs claim that the approval of the Commission was illegal, arbitrary, capricious, not supported by the evidence and specifically in violation of section 10.02.01 of the zoning regulations of the Town of Middlefield. Section 10.02 governs the issuance of special permits. It dictates, in pertinent part that, for applications for special permit for use in a residential zone, ". . . the location and size of such use, the nature and intensity of operations involved or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from and in the vicinity of the use will not be hazardous or inconvenient to, or detrimental to the character of the said residential district or conflict with the traffic characteristics CT Page 3530 of the neighborhood."
Appellants argument appears to be that the approval must have violated this regulation and been arbitrary and capricious because other commissions have expressed section 10.02.01 concerns on other applications regarding the subject property. In 1973, the Planning and Zoning Commission denied an application for camp sites based on quality of life concerns. In the application that is the subject of appeal in docket no. 83209, the commission found that the applications utilization of Powder Hill Road, was not prudent. That application was substantially different than this one. Among the differences, this application caps the traffic at 20,000 vehicles over the season and caps the usage of the facilities for various activities; that application had no cap. Therefore, the findings of the commission on where different uses were contemplated have no application to this permit. The overall cap of 20,000 incoming trips for the summer insured that the potential for traffic emanating from the site did not reach its full maximum potential capacity. (Return, exhibit 3). The plaintiffs did not present a traffic expert to contradict the report and statements by Hasketh. The commission had the right to place great weight on the expert's assertions.Bradley v. Inland Wetlands Agency, 28 Conn. App. 48, 53, 609 A.2d (1992).
The second argument of the appellants also addresses regulation section 10.02.01. The appellants argue that "the use of hypothetical vehicle trips to define the character of then neighborhood and current traffic patterns violated section 10.02.01." The traffic report from Hesketh Associates, Inc. (Return, 4) reported the maximum number of vehicles under the application both under the offered cap of 20,000 and under the projected potential for actual utilization. The applicant also calculated the number of vehicles that would be permitted under the 1971 permits. No the zoning regulations prescribed the manner of calculation projected traffic to be generated by a specific site use.
"The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. . . . [C]ourts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily CT Page 3531 or illegally. The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. (Citations omitted.)." Burnham v. Planning Zoning Commission,266 Conn. 261; 265-266 (1983). The court finds that the commission did not act arbitrarily or illegally in its reliance on the applicants' traffic expert.
In its motion of approval, which passed, the commission made the following findings: "[t]he Commission has considered the beneficial impacts of deleting the existing permit for Approved Musical Performances, as offered by the applicants, and the consequent elimination of traffic surges at the beginning and end of such performances." The record supports this finding and the appellants do not contest it; instead, however, they argue it is not a sufficient basis for the approval granted. Further, they argue that the traffic which will emanate from the application uses will cause irreversible harm to the character and safety of the neighboring community. The record discloses that the neighboring community was not protected from any cap on traffic from the already approved 1971 permits. The existing permits allowed 4,400 people per concert for 3 concerts. That exposure for traffic generated by a potential of 13,200 traveling in and out of the property at or about the same time was eliminated. This was important to the commission and is a valid basis for the approval of the permit, which otherwise complied with the Town regulations.
However, the appellant argues that there was not a valid permit for summer concerts and therefore the only premise stated for the commission's decision was faulty. They argue that the permit approval for concerts in 1971 was valid only for the summer of 1971 and not beyond it. The June 1971 permit provided, "Musical concerts: Limited as follows: a. For 1971 (May 1-Oct. 30) a maximum of 3 concerts. [Other conditions imposed as well.] (With reapplication for the 1972 season to the Zoning Commission to be considered on the basis of. . ." The September 1971 special permit amended the decision of the June, 1971 permit. The June, 1971 approval goes on to state: "The Commission specifically disallows any concerts for any season other than 1971 and expects to review this specific part of the decision with the applicant or his representatives before April 1, 1972." These amendments did not address the Musical concerts provision of the June, 1971, permit nor the specific limitation of the concert provision to CT Page 3532 1971.
The defendants have best summarized the law regarding review of this issue. Quoting from their brief, "`When the reasons are given, the Superior Court on appeal determines whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations that the agency is required to apply under the zoning regulations.' GraceCommunity Church v. Planning and Zoning Commission,42 Conn. Sup. 256, 260-61 (1972), citing, Housatonic Terminal Corporationv. Planning and Zoning Board, 168 Conn. 304, 305 (1975); DeMariav. Planning and Zoning Commission, 159 Conn. 534, 541 (1970);Daughters of St. Paul, Inc. Zoning Board of Appeals,17 Conn. App. 53, 56 (1988). `Where the zoning commission has formally stated its reasons for its decision the court should not go beyond that official collective statement of the Commission.'DeMaria 159 Conn. At 541." (Defendants' brief, p. 9).
The Zoning Commission has offered no other reason for its decision in its motion than the benefits derived from the elimination of summer concerts and the attendant traffic. The record discloses no authority or permit for the operation of summer concerts at the premises after the summer of 1971. The court may not go beyond this official collective statement of the Commission. It is based on an erroneous premise. Therefore, there is not a sufficient basis in the record to support the decision of the commission to approve the application for the reasons it stated.
ORDERS
It is ordered that the appeal is sustained.
MUNRO, J.